UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY DOUCETTE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 2:20-cv-00198-DBH |
| | ) |
| MATTHEW MAGNUSSON, | ) |
| | ) |
| Respondent | ) |

## RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION

Petitioner, pursuant to 28 U.S.C. § 2254, seeks relief from a state court conviction and sentence. (Petition, ECF No. 1.) Petitioner claims he was deprived of his constitutional right to effective assistance of counsel. (Petition at 6–9.) The State asks the Court to dismiss the petition. (Response, ECF No. 3.)

After a review of the section 2254 petition, the State's request for dismissal, and the record, I recommend the Court grant the State's request and dismiss the petition.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In March 2017, Petitioner was charged with robbery in violation of 17-A M.R.S. § 651(E), criminal threatening with a dangerous weapon in violation of 17-A M.R.S. § 209(1), terrorizing with a dangerous weapon in violation of 17-A M.R.S. § 210(1)(A), and illegal possession of a firearm in violation of 15 M.R.S. § 393(1)(A-1).[1]  (*State v.*

---

[1] Petitioner was charged in a criminal complaint and waived his right to an indictment and agreed to proceed by information.

*Doucette*, Me. Super. Ct., AROCD-CR-2017-00047, Docket Record at 1–2.)  A two-day jury trial was held in November 2017.  (*Id.* at 4.)

At trial, Michelle Hanson, a restaurant owner, testified that Petitioner, who was previously employed at the restaurant, entered the restaurant on the morning of March 13, 2017 while it was not open for business, pointed a handgun at her, and told her to give him $100,000 or he would kill her.  (Trial Transcript Vol. I at 152, 166, 169–176.)  Ms. Hanson said Petitioner was extremely angry and appeared to believe that she and her deceased husband were involved with or had knowledge of his being "set up" for something years before.  (*Id.* at 175–76.)  According to Ms. Hanson, after she told Petitioner that she did not have that amount of money, Petitioner threatened her family, told her to write down his phone number, to get whatever she had from the bank, to meet him at a nearby laundromat, and to tell no one what was happening.  (*Id.* at 177–81.)  After Petitioner left, another witness found Ms. Hanson curled up crying and called the police despite Ms. Hanson's fear of doing so.  (*Id.* at 51–59.)  Police found Petitioner at the nearby laundromat and arrested him shortly afterward, but a firearm was never located.  (*Id.* at 87–110.)

The jury found Petitioner guilty on all four counts. (Docket Record at 4.)  In December 2017, the Superior Court sentenced Petitioner to twenty-two years imprisonment with all but fifteen years suspended, to be followed by four years of probation.  (*Id.* at 5–6.)  In May 2018, the Sentence Review Panel denied Petitioner's application for leave to appeal from the sentence, (*State v. Doucette*, Me. Sent. Rev. Pan., SRP-18-76, Docket Record at 2.)  In November 2018, the Maine Law Court affirmed the conviction. (*State v. Doucette*, Me. L. Ct., ARO-18-75, Docket Record at 4.)

Petitioner filed a state petition for postconviction review in December 2018 and an amended petition in May 2019. (*Doucette v. State*, Me. Super. Ct. AROCD-CR-2019-00065, Docket Record at 1.) An evidentiary hearing was held in November 2019. (*Id.* at 2.) In January 2020, the state court denied the petition. (*Id.*; Postconviction Decision at 16–17.) In April 2020, the Maine Law Court denied Petitioner's request for a certificate of probable cause to appeal the post-conviction decision. (*Doucette v. State*, Me. L. Ct., ARO-20-24, Docket Record at 2.)

Petitioner subsequently filed the § 2254 petition.

## DISCUSSION

**A.    Legal Standards**

Under 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Absent circumstances not relevant to Petitioner's case, a petitioner is required to exhaust available state court remedies before he seeks federal habeas review. 28 U.S.C. § 2254(b), (c).[2] "Before seeking a federal writ of habeas corpus, a state prisoner must

---

[2] Title 28 U.S.C. § 2254(b) and (c) address exhaustion and state:

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State; or
>
> **(B) (i)** there is an absence of available State corrective process; or
>
> **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.

3

exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (per curiam)) (quotation marks omitted). In *Baldwin,* the Court noted that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan,* 513 U.S. at 365–66).

To exhaust a claim fully in state court in Maine, a petitioner must request discretionary review by the Law Court. *See* 15 M.R.S. § 2131. The Supreme Court has held that a procedural default bars federal review absent a demonstration of cause for the default and prejudice to the petitioner:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

---

> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> **(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> **(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

4

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[3]

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized a "narrow exception" to its holding in *Coleman*, based on equity, not constitutional law: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9, 16. However, when the procedural default relates to post-conviction counsel's actions at the discretionary-review stage rather than at the initial-review stage of the collateral proceedings, habeas relief is not available:

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . .

*Martinez*, 566 U.S. at 16 (citations omitted).

As to federal habeas claims that were adjudicated on the merits in state court, the federal court may not grant relief unless (1) the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision was based on an unreasonable determination of the facts, pursuant to section 2254(d)(2).[4]

---

[3] Procedural default is a judicial doctrine "related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition." *Lovins v. Parker,* 712 F.3d 283, 294 (6th Cir. 2013) (citing 28 U.S.C. § 2254(b), (c)).

[4] Title 28 U.S.C. § 2254(d) provides:

5

As to review of a state court decision under section 2254(d)(1), "[i]t is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson,* 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the [*Strickland v. Washington*, 466 U.S. 668 (1984)] standard itself." *Harrington*, 562 U.S. at 101. Claims of ineffective assistance of counsel are thus subject to a "'doubly deferential'" standard of review, in deference to both the state court and defense counsel. *Woods v. Etherton,* --- U.S. ---, ---, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). State court determinations of fact "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[5]

---

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

[5] The decision under review in this case is the Law Court's order affirming the decision of the trial court, because the Law Court's decision is the final state court adjudication on the merits of each claim. *See Greene v. Fisher*, 565 U.S. 34, 40 (2011) (noting that the last state-court adjudication on the merits of the petitioner's constitutional claim occurred on direct appeal to the state's supreme court); *Clements v. Clark*, 592 F.3d 45, 52 (1st Cir. 2010) ("A matter is 'adjudicated on the merits' if there is a 'decision finally

In *Strickland*, the Supreme Court set forth the relevant Sixth Amendment standard by which claims of ineffective assistance based on counsel's errors are evaluated on the merits; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. A court presumes "that counsel has 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690).

A court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

---

resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'") (quoting *Teti v. Bender*, 507 F.3d 50, 56-57 (1st Cir. 2007)).

However, because the Law Court's order did not clearly explain the Court's reasoning, the federal court may consider the trial court's decision:

> We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (noting the state may rebut the presumption).

7

### B.     Prior Conviction

Petitioner contends his trial attorney provided ineffective assistance by allowing a stipulation to be read to the jury stating that Petitioner had been convicted previously of a crime punishable by more than one year in prison. Information about a defendant's prior bad acts or character carries the risk of unfair prejudice because a jury may "generaliz[e] a defendant's earlier bad act into bad character and tak[e] that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." *Old Chief v. United States*, 519 U.S. 172, 180–81 (1997). For that reason, state and federal rules of evidence restrict the use of evidence concerning prior bad acts. *See e.g.*, Fed. Rule Evid. 404(b).

Although the prosecution is generally "entitled to prove its case by evidence of its own choice," the rules of evidence also require courts to balance the probative value of evidence against the risk of unfair prejudice. *Old Chief*, 519 U.S. at 186; Fed. Rule Evid. 403. A prosecutor's refusal of a defendant's offer to stipulate or admit certain facts is generally permissible "when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried." *Old Chief*, 519 U.S. at 191–92. When the proposed stipulation relates to a felon-in-possession charge, because "there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record" of a prior conviction, and because "there can be no question that evidence of the name or nature of the prior offense generally carries a

8

risk of unfair prejudice to the defendant," the general rule requires prosecutors to accept defendants' offers to stipulate or admit their felony-convict status. *Id.* at 189–92.[6]

Petitioner concedes that the stipulation in his case was appropriate but argues that his attorney should have argued that the stipulation should not be presented to the jury. Petitioner asserts his attorney should have arranged for the jury not to learn the name and nature of the prior offense and the fact that he was previously convicted of a felony. Petitioner's expert witness testified in the state post-conviction proceeding that an attorney could mitigate the potential for unfair prejudice through a jury waived trial on the felon-in-possession charge or by asking the Court to inform the jury that the defendant was prohibited by law from possessing a firearm without mentioning why the defendant was a prohibited person. (Hearing Transcript at 44–50; Postconviction Decision at 7.)

Petitioner has not established that the proposed strategies were required of competent counsel, and similar requests are not uniformly sought or granted. *See e.g.*, *United States v. Lara*, 970 F.3d 68, 85 (1st Cir. 2020) ("[t]he evidence that the jury considered included, as the government notes, a stipulation that '[the defendant] had been previously convicted of at least one crime punishable by a term of imprisonment exceeding one year'"); *United States v. Meadows*, 571 F.3d 131, 137 (1st Cir. 2009) ("Prior to jury selection, the defendant asked the court to instruct the jury simply that [the defendant] was among the class of people not allowed to carry a firearm. The court stated it would not

---

[6] Although Maine Rule of Evidence 403 and not the federal rule governed in this case, the language of the rules and the legal issues are indistinguishable in this context, as the state court acknowledged by analyzing *Old Chief*.

9

force the prosecution to go that far, and that the defendant only had a right to require the prosecution to stipulate the existence of a prior felony"). Petitioner, therefore, has not demonstrated that counsel's performance was substandard.

Even if Petitioner could show that counsel performed deficiently by allowing the jury to learn that he had been convicted of a crime punishable by more than one year in prison, the state court supportably determined that Petitioner was not prejudiced as a result. (Postconviction Decision at 8.) The state court noted Ms. Hanson's credible testimony and the corroborating evidence, including the testimony of another witness, the security video showing Petitioner at the restaurant and laundromat at the correct times, and Petitioner's phone number written on a piece of paper recovered from Ms. Hanson's notebook. (*Id.* at 9.) Given the quantity and quality of the evidence, the state court reasonably concluded that there was little if any chance that the stipulation concerning Petitioner's prior conviction impacted the jury's ultimate assessment. (*Id.* at 9–10.)

Petitioner also argues his attorney provided ineffective assistance by incorrectly advising him that his prior conviction could be used to impeach his testimony if he exercised his right to testify at trial. Evidence of a prior felony conviction is generally admissible to impeach a witness's character for truthfulness if less than fifteen years have passed since the conviction or if less than ten years have passed since the witness was released from confinement. Me. Rule Evid. 609(b). Petitioner testified that his attorney misinformed him because his prior conviction was in 2000, and when Petitioner was asked about his release date, he said, "I think it was, um, August of 2007, I do believe." (Hearing Transcript at 14.)

10

The state court determined that it could not find "with any degree of confidence, that the drug possession conviction would not have been admissible." (Postconviction Decision at 12.) The state court also noted that counsel's advice against testifying was based on other legitimate strategic concerns, including how Petitioner would present as a witness and how the jury would react to his testimony. (*Id.* at 11-13.) Given the strength of the state's evidence against Petitioner and the legitimate strategic concerns about Petitioner testifying at trial, Petitioner has failed to demonstrate that counsel's performance was inadequate or that Petitioner was prejudiced.

In sum, the state court's conclusion—that Petitioner failed to show that his attorney performed deficiently concerning Petitioner's prior conviction or that Petitioner was prejudiced as a result—was not contrary to or an unreasonable application of *Strickland* and its progeny.

**C.     Failure to Object to Prosecutor's Statements**

Petitioner contends that his attorney provided ineffective assistance by not objecting when the prosecutor commented that the jury should hold Petitioner accountable and when the prosecutor commented that the only testimony about the effect of the gun was from Ms. Hanson, which comment, Petitioner contends, constitutes an improper comment on Petitioner's decision not to testify and the lack of evidence presented by Petitioner. The state court noted that counsel responded to the prosecutor's comments, which response included, asking the court a sidebar to prevent further comment and later filing a motion for a new trial based in part on the prosecutor's comments. The state court acknowledged,

11

however, that additional steps might have potentially benefitted Petitioner, such as by obtaining a curative instruction. (*Id.* at 14–15.)

Ultimately the state court supportably determined that Petitioner was not prejudiced by his attorney's performance because even if his attorney had sought a mistrial or curative instruction immediately, there was no reasonable probability that a mistrial would have been granted or that a curative instruction would have produced a different result and, therefore, the comments and counsel's response to the comments did not undermine confidence in the verdict or render it unreliable. (*Id.* at 15–16.) The state court's conclusion was not contrary to or an unreasonably application of *Strickland* and its progeny.

**D.     Other Claims**

Petitioner raised an additional claim (failure to investigate/obtain video from crime scene) in the petition and other arguments in his reply memorandum (failure to investigate/obtain discovery from a prior case and his unemployment records). Petitioner is procedurally defaulted on the additional claim raised in his petition because he failed to exhaust it fully by presenting it to the Maine Law Court. *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim" ); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) ("there is a procedural default for purposes of federal habeas" review if "the court to which the petitioner would

be required to present his claim in order to meet the exhaustion requirement would now find the claims procedurally barred").[7]

Even if the claims were not barred, the claims do not entitle Petitioner to relief as the postconviction court reasonably concluded that Petitioner had failed to establish that his attorney performed deficiently or that he was prejudiced as a result of his attorney's decisions. For example, Petitioner asserts his attorney failed to investigate the case in part because there were allegedly two video cameras at the restaurant in addition to the two discussed at trial, and Petitioner asserts the additional video recordings would have contradicted key parts of Ms. Hanson's testimony. The postconviction court apparently rejected that claim, however, because there was insufficient evidence to establish the existence of the additional cameras and Petitioner did not present any recordings. (Postconviction Decision at 12 n.4.) Similarly, the record lacks any evidence that would support a determination that Petitioner's unemployment records or the discovery from a prior criminal case would have generated a reasonable probability of a different result.

In sum, Petitioner is not entitled to relief based on the additional unexhausted claims.

---

[7] To the extent Petitioner raises a claim for the first time in his reply memorandum, Petitioner's claim fails as a petitioner may not deprive the opposing party of an opportunity to respond by raising additional claims in a reply memorandum that were not contained in the petition. *Nicolas v. Rhode Island*, 37 F. App'x 3, 4 (1st Cir. 2002) ("arguments may not be raised for the first time in a reply brief"); *United States v. Picini*, No. CR 13-10061-MLW, 2020 WL 2104838, at *5 (D. Mass. May 1, 2020) ("Like other civil litigants, habeas petitioners may not raise grounds for relief for the first time in a reply brief"); *Fleming v. Merrill*, No. 01-239-B, 2002 WL 1334826, at *15 n.6 (D. Me. June 18, 2002) (same).

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 29th day of January, 2021.